## PINCHBACK v. GULF OIL CORP.

### No. 4689.

Court of Civil Appeals of Texas. Beaumont.

July 13, 1951.

Rehearing Denied Sept. 19, 1951.

trial court in this case. We have considered the appellee's motion for rehearing, with oral argument thereon, and have concluded we were in error in doing so. The appellee's motion for rehearing is granted, the former opinion in this case is withdrawn, and the following is now filed as the opinion in this case:

In 1929 and prior thereto Mrs. Pinchback was the owner of a tract of land containing 119 acres in the Charles Williams League in Jefferson County. By her deed dated February 6, 1929, she conveyed to Gulf Pipe Line Company a diagonal strip of 8.28 acres out of the said 119 acres, reserving unto herself, "⅛th of all minerals that may hereafter be produced and saved" on the land conveyed. The total cash consideration paid by the grantee to the grantor was $5,400. This conveyance was made before oil was discovered and produced in that immediate vicinity. Gulf Pipe Line's interest in the land passed by conveyance to Gulf Oil Corporation. On January 30, 1933 Mrs. Pinchback executed an oil and gas lease upon the entire 119 acre tract to J. P. Landry, which lease was assigned by Landry to Humble Oil & Refining Company. In 1936 oil was discovered on the 119 acre tract and Humble Company completed two producing wells on the land adjoining the 8.28 strip. Thereafter in January, 1937, Gulf Oil Corporation and Humble Oil & Refining Company entered into a pooling agreement whereby they pooled their respective interests in the 119 acre tract and thereby formed, among others, three 20 acre tracts designated by them as Units 3, 4 and 5. The tracts were so arranged and located as to include a portion of the 8.28 acre tract in each unit. The salient portions of this pooling agreement will be set out hereinafter in detail. Under this pooling agreement Humble was authorized to conduct all drilling operations as to the interests of both parties and then completed producing wells on each of the 3 units by December, 1937. No wells were drilled and no production made on the 8.28 acre tract. Under its lease from Mrs. Pinchback to Landry and assigned to it the Humble Company has paid to Mrs. Pinchback over $130,000 in royalties from the wells operated on Mrs. Pinchback's

Lipscomb & Lipscomb, E. E. Easterling, Beaumont, for appellant.

Cecil, Keith & Mehaffy, Beaumont, and Archie D. Gray, H. C. Manning, and Walter C. Clemons, all of Houston, for appellee.

R. L. MURRAY, Justice.

At a prior sitting of this court and by an opinion filed December 21, 1950, we reversed and rendered the judgment of the

land. She had conveyed 1/4th of her 1/8th royalty interest to other parties. During the same period of time the Gulf Oil Corporation has received from Humble a sum in approximately the same amount.

The contract by which the Gulf Oil Corporation and Humble Oil & Refining Company pooled their respective interests in the 119 acre Pinchback tract of land recited that the parties were owners of certain interests in lands in the general territory of the 8.28 acre tract and recited that the parties had agreed to pool their interests in the land, including the 8.28 acre tract upon which the Gulf owned the surface and 7/8ths of the minerals; they agreed to divide the 8.28 acre tract into 3 units for drilling purposes which 3 units each contained a portion of the 8.28 acre tract and portions of land from other portions of the Pinchback 119 acre tract. The contract thereafter provided as follows:

"And Humble, its successors and assigns are hereby given the right to develop and operate each of said respective pooled units without reference to the boundary line, or lines, separating the tracts composing such unit, and it shall not be necessary to drill on one of said tracts composing a unit in order to protect the same from drainage from a well drilled on another tract included in such unit, and Humble, its successors or assigns are hereby given the right to drill Unit #1 as though all of the acreage included therein were included in the S. L. Guinn Lease, and to drill Unit #2 as though all of the acreage included there were included within the Mary E. Langham Lease, and to drill the respective Units #3, #4 and #5 in the same manner as though the 7/8ths mineral interests under Gulf's 8.06 acre tract were subject to Mrs. Seawillow Pinchback et vir lease above described.

"It is specifically understood and agreed that Gulf shall receive 213/1000ths of all oil and gas produced and saved from Unit #1 under the terms and provisions of the S. L. Guinn et vir lease, and shall be entitled to and receive 2085/10000ths of the oil and gas produced and saved from Unit #2 under the terms and provisions of said Mary E. Langham Lease, and shall be en-

titled to and receive 7/8ths of 135/1000ths of the oil and gas produced and saved from Unit #3 under the terms and provisions of Mrs. Seawillow Pinchback et vir lease, and shall be entitled to and receive 7/8ths of 101/1000ths of the oil and gas produced and saved from Unit #4, under the terms and provisions of Mrs. Seawillow Pinchback et vir lease, and shall be entitled to and receive 7/8ths of 169/1000ths of the oil and gas produced and saved from Unit #6 under the terms and provisions of Mrs. Seawillow Pinchback et vir lease.

"It is specifically understood and agreed that as between the parties hereto all of the oil and gas produced and saved from the respective units hereinabove described, over and above that portion of production to which Gulf is entitled to by reason of the provisions hereof, shall belong to Humble, subject to the rights, if any, of the royalty owners under the respective leases above described; provided, however, that nothing herein contained shall be construed as giving to the royalty owners under the S. L. Guinn et ux. lease and/or the Mary E. Langham lease any royalties on oil produced from the Gulf's 4.26 acre tract or Gulf's 4.17 acre tract.

"Gulf warrants that it is the owner of the fee title to the 4.26 a.d. 4.17 acre tracts and is the owner of all the oil, gas and other minerals thereunder, and does further warrant that it is the owner of 7/8ths of the oil, gas and other minerals under the 8.06 acre tract above described. Humble warrants that it is the owner of the S. L. Guinn et ux., Mary E. Langham and Mrs. Seawillow Pinchback et vir leases above described, subject to the royalty provisions thereof and certain overriding royalties affecting same.

"It is further understood and agreed between Humble and Gulf that it is contemplated that Humble shall be in charge of development operations on the respective units above described, and Gulf and Humble do hereby enter into the following joint operating contract in connection with the pooling into the units above described of the property and leasehold rights hereinabove described for the purpose of setting out more fully the terms and conditions

under which Humble shall operate said premises for the Joint Account:

"Now, Therefore, in consideration of the additional mutual covenants herein contained, to be kept and performed by the parties hereto, it is mutually agreed as follows:

"1. Humble shall manage, develop and operate the respective units hereinabove described, said management, development and operation to be in accordance with the terms and conditions of this contract.

"2. Humble out of its portion of the production from the respective Units #1 and #2, above described, shall take care of the royalties and overriding royalties, if any, effecting the acreage placed in such Unit by Humble; Gulf, out of its portion of the production from such respective units shall take care of all royalties, if any, affecting the acreage placed in such respective units by Gulf; Humble, out of its portion of the production from Units #3, #4 and #5, shall take care of all royalties and overriding royalties, if any, payable under the terms and provisions of the said Mrs. Seawillow Pinchback et vir lease and/or any assignment thereof, and shall account to R. T. Pinchback and wife, Seawillow Pinchback, their heirs, successors and assigns, out of Humble's portion of the production from the respective portions of Gulf's 8.06 acre tract included in the respective Units #3, #4 and #5 for the portion of the production from such respective portions of such Gulf's 8.06 acre tract, if any, to which they are entitled by reason of the reservation in said deed of February 6, 1929, from R. T. Pinchback and wife, Seawillow Pinchback, to Gulf Pipe Line Company above described, Gulf, out of its portion of the production from such units, shall take care of and be responsible for all other royalties affecting the 8.06 tract.

"3. There is attached hereto and marked Exhibit 'A' a printed form designated 'Accounting Procedure', which is made a part of this contract as if incorporated herein. The term 'Operator' as used in Exhibit 'A', and as hereinafter used in this contract, shall mean Humble. The term 'Non-Operator' as used in this contract, shall mean Gulf. The combined interest of Operator and Non-Operator shall be referred to as 'Joint Account'.

"4. The Operator shall have full control and management of operations upon the respective units hereinabove described, with power to do whatever, in its judgment, may be reasonable, necessary or expedient in the development and operation of such premises, subject only to the limitations herein provided.

"5. All costs and expenses attending or incident to the development and operation of said respective units, including all taxes hereunder, shall be borne and paid by Operator and Non-Operator in the respective portions hereinafter set out and all material and equipment furnished and used in connection with said respective units shall belong to Operator and Non-Operator in the same proportion, to-wit:

Unit #1:
| | | |
|---|---|---|
| Operator | —— | 787/1000 |
| Non-Operator | —— | 213/1000 |

Unit #2:
| | | |
|---|---|---|
| Operator | —— | 7915/10000 |
| Non-Operator | —— | 2085/10000 |

Unit #3:
| | | |
|---|---|---|
| Operator | —— | 867/1000 |
| Non-Operator | —— | 138/1000 |

Unit #4:
| | | |
|---|---|---|
| Operator | —— | 899/1000 |
| Non-Operator | —— | 101/1000 |

Unit #5:
| | | |
|---|---|---|
| Operator | —— | 831/1000 |
| Non-Operator | —— | 169/1000" |

Under the pooling contract between Gulf and Humble the 8.28 acre tract conveyed by Mrs. Pinchback to Gulf Pipe Line Company by deed of August 6, 1929, was recognized by Humble Oil & Refining Company to be the property of Gulf Refining Company (predecessor of Gulf Oil Corporation), and Gulf conceded the ownership of Humble in the remainder of the lands described in the lease to J. P. Landry, dated January 30, 1933; and the entire 8.28 acres (called in the pooling agreement 8.06 acres) was incorporated in the three 20-acre pooled units.

Mrs. Pinchback, appellant, received from Humble Oil & Refining Company the value

of ¾ths of ⅛th of the oil extracted from wells drilled on Humble's portion of the land described in the lease of January 30, 1933 to J. P. Landry, and no more. She had previously sold ¼th of her royalty interest in the entire tract to other persons.

The exhibit sent up with the statement of facts shows that the appellant received only ¾ths of the ⅛th royalty from wells drilled on Humble's portion of the land described in the lease to J. P. Landry dated January 30, 1933, and by agreement of counsel all of the reports of production, including the one in evidence, from the date of discovery to June or July, 1949, made by Humble to Mrs. Pinchback, were similar to each other.

Gulf Refining Company (predecessor of Gulf Oil Corporation) under the terms of the pooling contract with Humble, agreed to pay its portion of the drilling and production costs incident to the production of oil from the wells drilled on each of the three pooled 20-acre tracts in proportion to the acreage contributed to the three pooled Units Nos. 3, 4 and 5 referred to in the pooling contract. There was no evidence that Gulf paid or did not pay its portion of such costs.

Mrs. Pinchback sued Gulf Oil Corporation seeking to recover: (a) For damages for failure to reasonably develop the 8.28 acre strip under what she alleged to be a covenant implied in the deed for reasonable development after the land was proven to be productive of oil; and (b) in the alternative, for her portion of the proceeds received by Gulf Oil Corporation from Humble Oil & Refining Company as the result of the pooling agreement entered into by Gulf and Humble, which she alleges was executed without her knowledge or consent. Humble Oil & Refining Company was not a party to the suit. The trial court granted Gulf's motion for peremptory instruction, and entered judgment for Gulf, defendant in the trial court. Mrs. Pinchback has duly perfected her appeal from that judgment.

The grounds upon which Gulf's motion for instructed verdict was based were as follows:

"1.

"It is apparent from the record of this case that the plaintiff owns a mineral interest rather than a royalty interest in the 8.28 acre tract of land described in plaintiff's petition, and therefore the defendant is under no obligation whatsoever to protect plaintiff's ⅛th mineral interest, and the plaintiff had the right and opportunity to protect said ⅛th interest by taking whatever steps she desired to produce oil from said 8.28 acres.

"2.

"Plaintiff has failed to state a cause of action against the defendant for failure to reasonably develop the land in controversy, because there is no evidence in this record upon which a jury could base a finding that this defendant has not reasonably developed the premises.

"3.

"Plaintiff has failed to state a cause of action against the defendant for failure to reasonably develop the land in controversy, because there is no evidence in this record legally sufficient to support a finding that the defendant has failed to reasonably develop the premises.

"4.

"The record shows conclusively that this defendant is under no obligation whatsoever to reasonably develop the premises, insofar as the plaintiff is concerned, the record showing that the defendant paid a valuable consideration, to-wit, $5,400 for the 8.28 acre tract of land, and the instrument under which the plaintiff asserts title and claim in this suit is a general warranty deed, and is not any character of an oil and gas lease to the defendant Gulf Oil Corporation.

"5.

"The plaintiff has failed to state or prove any case of drainage in this suit, and therefore any question of a cause of action based upon an alleged drainage cannot be sustained by the record in this case.

"6.

"If the defendant be mistaken concerning the construction of the instrument un-

der which plaintiff claims, concerning the obligation on the part of the defendant to reasonably develop the premises, there is absolutely no evidence whatsoever in this case upon which a jury could pass upon what a reasonably prudent person would do under the same or similar circumstances, the record failing entirely to show the cost of drilling a well, or the existence of oil and gas under the tract in dispute.

"7.

"If the defendant be mistaken in its construction of the reservation contained in the deed from Pinchback to Gulf Oil Corporation, that the same is merely a reservation of a mineral right and not a royalty, and if the same should be construed as a royalty reservation, then the record shows this, and only this: That the Gulf Oil Corporation holds the fee simple title to the narrow strip in controversy under a general warranty deed from the plaintiff, who has reserved a fractional royalty interest, and there is no contention or proof that the plaintiff is claiming under any oil, gas or mineral lease containing either an express or implied obligation to reasonably develop the premises, and there is never in law an implied obligation upon the part of a grantee under a general warranty deed to develop the premises he holds under said deed for oil and gas for the benefit of grantor who happens to attempt to reserve a fractional royalty interest therein, and certainly in the deed offered in evidence there is no express obligation therein contained.

"8.

"If plaintiff has stated a cause of action under any theory, which is denied by the defendant, there is absolutely no proof of any character upon which a jury could ascertain the date and amount of the alleged injuries to plaintiff.

"9.

"If drainage of any kind has occurred, against which the defendant is obligated to protect the plaintiff, plaintiff has obtained the benefit from such drainage, because the plaintiff has received from the Humble Oil & Refining Company full royalty from all oil that might have been drained from the land in question.

"10.

"The plaintiff has completely failed to establish any case for any amount of damages against the defendant, and any attempted submission of the question of damages to a jury by the court would merely allow the jury to surmise and speculate without any basis therefor, upon the question of damages, because plaintiff has wholly and completely failed to show that the oil which she received from the wells drilled adjacent to the 8.28 acre strip in which she definitely owns an established interest, came from or was drained from the 8.28 acre tract, nor has she proved or established by any evidence that if oil wells had been drilled upon the 8.28 acre strip, which was comparatively narrow, and which ran diagonally across her entire holdings, that said production would not in turn have reduced the amount of oil which she obtained from the wells drilled by the Humble Oil & Refining Company. In other words, unless and until plaintiff proves, first, drainage and secondly damages resulting therefrom, even though it be conceded that there is a legal wrong, it is a case of damum absque injuria, because the plaintiff has not proved and cannot prove any damages from any act or dereliction of the Gulf Oil Corporation, even assuming that the Gulf Oil Corporation was under any duty whatsoever to her.

"11.

"Although there has been some mention in the evidence regarding a certain pooling agreement between the Gulf Oil Corporation and the Humble Oil & Refining Company, this can afford no basis for any judgment on behalf of plaintiffs against this defendant, because the plaintiff is not a party thereto, and not in privity to the said contract; and further because there are no pleadings in this case by the plaintiff attempting to cast a cause of action upon some basis arising out of the so-called pooling agreement; and furthermore the only available figures concerning any benefits that the Gulf Oil Corporation might have

received by said pooling agreement do not take into consideration the costs of operation and production expense in connection with the figures introduced by the plaintiff in reference to said pooling arrangement; and if as alleged or stated in the plaintiff's petition, there was fiduciary relationship existing between the Gulf Oil Corporation and the plaintiff, which is not admitted, but which is denied, certainly the plaintiff cannot here attempt to take advantage of a pooling agreement between Gulf Oil Corporation and Humble Oil & Refining Company upon the theory of a partnership or fiduciary relationship, and seek to recover from this defendant the net value of the oil produced without participating in any manner in the costs of drilling the wells or the expense incidental thereto.

## "12.

"The Humble Oil & Refining Company by leasing the entire Pinchback 122 acre tract, including the right of way here involved, authorized the Humble Oil & Refining Company to pool their interests with that of the Gulf Oil Corporation, and the Gulf Oil Corporation by pooling with the Humble Oil & Refining Company is not liable for any royalty not produced from the 8.28 acres.

## "13.

"By acceptance of the full ¾ths of ⅛th of all the oil produced under the terms of the contract between Gulf Oil Corporation and Humble Oil & Refining Company, Mrs. Seawillow Pinchback acquiesced in the pooling agreement between Gulf Oil Corporation and Humble Oil & Refining Company and is forever estopped to deny that she has joined into said pooling agreement."

The appellant brings her appeal under 13 Points of Error. The first point is a general one, that the trial court erred in sustaining appellee's motion for instructed verdict and entering judgment that appellant take nothing by her suit. Her second point is that the trial court erred in holding that Mrs. Pinchback's interest in the land in question was a mineral interest rather than a royalty interest, and in concluding that the defendant was under no obligation to protect appellant's ⅛th royal-

ty in the 8.28 acre tract. The third point is that the trial court erred in refusing to award plaintiff judgment for her part of the oil apportionable to the 8.28 acre strip in question. Appellant's fourth, fifth and sixth points are merely detailed argument in support of the third point. By her seventh point the appellant contends that the trial court erred in sustaining grounds two, three and eight of Gulf's motion for peremptory instruction, in holding "that plaintiff has failed to state a cause of action against the defendant for failure to reasonably develop the land in controversy" and in failing to give effect to plaintiff's alternative cause of action, which asserted a right to recover her portion of the benefits which accrued to Gulf as a result of its pooling agreement with Humble; that it erred in failing to give effect to the evidence under her alternative pleading which established the quantity of oil and the amounts of money received by Gulf under the pooling agreement for placing the 8.28 acres in the pool. Her eighth point is that the trial court erred in its construction of the deed from Mrs. Pinchback to Gulf Pipe Line Company, and sustaining counts four and five of the grounds in the motion for peremptory instruction, whereby the trial court held that there was no obligation to reasonably develop the premises on the erroneous theory that there was no implied covenant to develop the land or save it from drainage as is implied in the oil and gas lease. The ninth point complains of the action of the trial court in sustaining grounds six and seven of Gulf's motion for peremptory instruction. The tenth point complains of the action of the trial court in sustaining the ninth, tenth and eleventh grounds of Gulf's motion for peremptory instruction and contains a detailed argument in support of such point. By its eleventh point, appellant says that Humble acquired no rights in the 8.28 acre strip under its lease from Pinchback to Landry and expressly conceded by the terms of the pooling agreement that the right to produce oil from the 8.28 acre tract was vested exclusively in Gulf and its predecessor and that the Gulf having so granted said right under the pooling agreement, the trial

court erred in deciding that Gulf was not liable to Mrs. Pinchback because the oil was not produced from the 8.28 acre strip. By its twelfth point she contends that the fact that she accepted royalties from Humble on oil produced from lands not embraced in the 8.28 acre strip, without knowledge of the existence of the pooling agreement between Humble and Gulf, did not give rise to an estoppel as against her claim for damages by reason of Gulf's breach of its implied obligation to develop the 8.28 acre strip, and the trial court erred in holding to the contrary. By her thirteenth point she contends that if she is mistaken in her alternative cause of action arising from the alleged trusteeship imposed upon the Gulf under the deeds and under the pooling agreement and of her right to participate to the extent of ⅛th of the production realized by Gulf under said pooling agreement, then the trial court erred in instructing the jury to find for defendant Gulf, in that the evidence raised issues of fact to be submitted to the jury as to whether: (a) The 8.28 acre strip would have produced oil in paying quantities; (b) a reasonably prudent operator would have drilled one or more wells on said strip; (c) plaintiff suffered damages by reason of defendant's failure to develop such strip; (d) the amount of damages suffered by the plaintiff by reason of defendant's failure to develop the strip.

The statement, authorities and arguments under the appellant's first four points are combined and presented together in her brief. Under her points Nos. 6 to 12, inclusive, the appellant in her brief adopts the statement, authorities and arguments presented under the first four points. The first twelve points are therefore presented and argued together and we will consider them together here.

■ We are at first confronted with the construction to be placed upon the reservation in the deed from Mrs. Pinchback to Gulf Pipe Line Company. The effect of this deed was to vest in the grantee, and by subsequent conveyance, in the appellee Gulf Oil Corporation, ownership of the surface of the land and ⅞ths of the oil beneath the surface, with the obligation to deliver to the grantor Mrs. Pinchback, her heirs or assigns ⅛th of the gross amount of any oil which might be produced therefrom. This ownership was only qualified by Mrs. Pinchback's limited use of the surface of the land. The grantee and through it the Gulf Oil Corporation, had the usual rights of ownership and the right of leasing and the right of use, including that of development for minerals. The reservation brought about no obligation on the part of the grantee to develop the land for oil production, unless the land proved to be productive of oil. After the execution and delivery of the conveyance we believe that Mrs. Pinchback's reservation placed her in a position of ownership closely akin to that of a royalty owner only. She had no right to lease the land for mineral development or to develop it herself. She was dependent upon the vendee and its assignee Gulf Oil Corporation to see that her ownership of the minerals reserved was protected and respected, when oil was discovered and produced on the adjoining lands, even though these adjoining lands were also owned by Mrs. Pinchback. The relationship between Mrs. Pinchback and Gulf Oil Corporation was such that she could look to it to protect her ⅛th of the minerals from drainage by wells close by on the adjoining land. In Freeport Sulphur Company v. American Sulphur Royalty Company, 117 Tex. 430, 6 S.W.2d 1039, 60 A.L.R. 890, it is held that there can be an implied covenant to develop the property even though the instrument relied on be a conveyance of the minerals and not a lease, and that a reservation of an interest in the minerals to be delivered to the grantor when produced, standing alone, unaided by any other circumstance, is not sufficient to justify the courts in reading into the written contract the additional provision requiring the grantee to make speedy development in the event of discovery of oil. By her deed to Gulf, Mrs. Pinchback reserved the right to the limited use of the surface also. She did not reserve the right to enter on the land and develop it for oil. By the deed the uses which she could make of the land were specifically limited. See: Lane v. Hughes, Tex.Civ.App., 228 S.W.2d 986.

We conclude that this was a reservation of the royalty interest and not a mere interest in the minerals.

The pooling agreement between the Gulf Oil Corporation and Humble Oil & Refining Company was undoubtedly lawful and proper. Such an arrangement for the development of both the large tract lease to Humble and the 8.28 acre strip largely owned by Gulf in the manner set out in the pooling contract appears to be a most economical method of extracting oil from the land. Mrs. Pinchback's ownership of ⅛th of all oil produced and saved from the 8.28 acre strip was not diminished nor altered in any way by this pooling agreement. She had received from Humble her share of ⅛th of all oil produced from each of the three Units Nos. 3, 4 and 5, which units included the 8.28 acre strip of land. Even though Gulf, by its pooling agreement with Humble, has been able to secure benefits from its ownership of the surface and ⅞ths of the minerals of the 8.28 acre strip, it is not shown by any evidence that she has been damaged in any way by Gulf's pooling agreement with Humble and its receipt of benefits thereunder. By the pooling agreement, Humble agreed to pay to Mrs. Pinchback and her vendees ⅛th of all oil produced under the three 20-acre producing units. There is a complete absence of any evidence of any drainage by wells on Mrs. Pinchback's adjoining land from the 8:28 acre strip. If there was a duty on the part of Gulf to Mrs. Pinchback, arising by an implied obligation on its part to develop fully the 8.28 acre strip for oil after Humble had made production on the whole Pinchback tract, that obligation was satisfied by the payment to her and her vendees by Humble of ⅛th of the value of all oil produced from these three 20-acre production units.

The appellee also cites and relies upon the case of Indian Territory Illuminating Oil Co. v. Rosamond, 190 Okl. 46, 120 P.2d 349, 139 A.L.R. 246. Under that case by the Supreme Court of Oklahoma, if there was a drainage of oil from the 8.28 acre strip by producing wells on adjoining land, also owned by Mrs. Pinchback, she would not be damaged by such drainage for the reason that she was benefitting by the drainage by wells on her adjoining tract to the same extent that she was damaged by the drainage from the smaller tract, of which she owned a fractional royalty. We believe this principle should be applied here, and we hold that if there was any such drainage she has not been damaged thereby.

Mrs. Pinchback cannot recover under these circumstances and the evidence in this case, since it is clear that she has received payment for her proper share (¾ths) of ⅛th of all oil produced from under the entire Pinchback tract, regardless of whether it came from under the 8.28 acre strip or not.

The judgment of the trial court is affirmed.