

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| DEVON ENERGY PRODUCTION COMPANY, LP, EASTLAND OIL CO., SPINNAKER INVESTMENTS, LP, CALLON (PERMIAN) LLC f/k/a CARRIZO (PERMIAN) LLC, TILDEN CAPITAL MINERALS, LLC, PEGASUS RESOURCES, LLC, THE WOODLANDS VENTURE CAPITAL COMPANY, MAP2009-OK, JOURNEY OIL & GAS, INC., EASCO, LLC, TERRY JENNINGS, as Trustee of the TJS TRUST, WALKER ROYALTY, LP, BEVERLY GAY NICHOLS, GREGORY P. MILLER, BOYD D. McMILLAN and DELFINA L. McMILLAN, | § § § § § § § § § § | No. 08-21-00217-CV<br><br>Appeal from the<br><br>143rd Judicial District Court<br><br>of Reeves County, Texas<br><br>(TC# 17-05-21958-CVR) |
| Appellants, | § | |
| v. | § | |
| ENPLAT II, LLC, PLATFORM II, LLC and SIMMONS BANK f/k/a SOUTHWEST BANK, MANAGEMENT, | § § § | |
| Appellees. | § | |
| | § | |

## SUBSTITUTED OPINION

Appellee's Motion for Rehearing is hereby denied. The opinion and judgment issued on January 23, 2023 is withdrawn, and the following is the substituted opinion of this Court.

In this appeal, we are asked to construe the terms of a 1940 deed to determine whether the grantors reserved a 1/16th fixed royalty interest or a 1/16th non-executive mineral interest when conveying a particular tract of property. Appellants argue the trial court erred in finding that the grantors intended to reserve a royalty interest and that the grantors' intent was to instead reserve a mineral interest. We agree and reverse the trial court's order granting Appellees' summary judgment motion and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The 1940 Deed

In October 1940, Rosa Thomason Harris and J.M. Harris (the Harris Grantors), conveyed to John Lopoo (Lopoo) their interests in Sections 37, 39, 40 and 65, Block 4, in Reeves County, Texas (the Property), subject to the reservation language below.

> However, this conveyance is made with the express understanding that there is reserved to the Grantors, their heirs and assigns an undivided one-sixteenth (1/16) of any and all oil, gas or other mineral produced on or from under the land above described. John Lopoo [Grantee], or his heirs and assigns shall have the right to lease said land for mineral development without the joinder of Grantors or their heirs and assigns, and to keep all bonus money, as well as all delay rentals, but when, if and as Oil, Gas or other mineral is produced from said land, one-sixteenth (1/16) of same, or the value thereof, shall be the property of Grantors, their heirs and assigns.[1]

Through a series of conveyances, Appellants (collectively Devon Energy) obtained all of Lopoo's interests, and Appellees (collectively Enplat II) obtained all of the Harris Grantors' interests. The Property is currently subject to an oil and gas lease containing a 1/5th royalty rate (the MAP lease). Prior to 2017, Lopoo's successors-in-interest treated the 1940 deed as reserving a 1/16th non-executive mineral interest in the Property and therefore credited the Harris Grantors'

---

[1] The parties later executed a Correction Deed on December 3, 1940, but did not alter the language, nature or scope of the interest reserved.

2

successors-in-interest with owning 1/16th of 1/5th of all minerals produced on the Property. The Harris Grantors' successors-in-interest were thus paid a 1/80th royalty in the production.

In 2017, Enplat II acquired title to 2/3 of the Harris Grantors' reservation. By letter dated March 9, 2017, Enplat II contacted Devon Energy to dispute the parties' prior interpretation of the deed, claiming that it reserved a fixed 1/16th royalty interest in all minerals produced from the Property rather than a 1/16th mineral interest. Enplat II sought a royalty interest five times the amount the Harris Grantors' successors-in-interest had been receiving. When Devon Energy disputed this deed interpretation, Enplat II sought a declaratory judgment that the 1940 deed reserved a fixed 1/16th royalty interest in the Property. Simmons Bank, which owns the remaining 1/3 interest in the reservation, was brought into the suit as an involuntary plaintiff. Devon Energy filed a counterclaim seeking a declaratory judgment construing the 1940 Deed as reserving a 1/16th non-executive mineral interest. Both parties sought an award of attorney's fees.

The parties thereafter filed competing motions for summary judgment, each seeking a declaratory judgment interpreting the deed in its favor. Following a hearing, the trial court issued a final judgment denying Devon Energy's motion for summary judgment and granting Enplat II's motion, interpreting the deed to contain a reservation of a fixed 1/16th royalty interest rather than a 1/16th mineral interest. The court further ordered each party to bear its own costs and attorney's fees. Devon Energy appeals, raising the sole issue of whether the trial court's interpretation of the deed was legally correct.[2]

---

[2] In the trial court, Enplat II also brought claims for unjust enrichment and breach of Chapter 91 of the Texas Natural Resources Code, seeking reimbursement for the royalty payments to which they believed they were entitled from 2017 forward. Various Appellants also filed claims for trespass to try title and to quiet title. However, through a series of stipulations between the parties, the only issue before us at this time is the 1940 deed interpretation.

## II. STANDARD OF REVIEW

When a trial court renders a declaratory judgment through summary judgment proceedings, we review the "propriety of the trial court's declarations under the same standards we apply to summary judgment." *See Twin Creeks Golf Group, L.P. v. Sunset Ridge Owners Ass'n, Inc.*, 537 S.W.3d 535, 539 (Tex. App.—Austin 2017, no pet.) (citing *Hawkins v. El Paso First Health Plans, Inc.*, 214 S.W.3d 709, 719 (Tex. App.—Austin 2007, pet. denied)). We review the grant of a motion for summary judgment de novo. *See Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). When opposing parties file cross-motions moving for summary judgment on the same issues and the trial court grants one motion and denies the other, we consider the summary judgment evidence presented by both sides, determine all questions of law presented, and if we determine that the trial court erred, we render the judgment the trial court should have rendered. *Id.* at 248. Here, the parties have not raised any factual disputes; the only issue is whether the trial court correctly construed the terms of the 1940 deed. *See Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991); *see also Greer v. Shook*, 503 S.W.3d 571, 582 (Tex. App.—El Paso 2016, pet. denied) (issue on appeal involving deed construction raised question of law that we review de novo) (citing *Anadarko Petroleum Corp. v. Thompson*, 94 S.W.3d 550, 554 (Tex. 2002)).

When conducting our review, we apply our own judgment without deference to the trial court's decision. *See WTX Fund, LLC v. Brown*, 595 S.W.3d 285, 293 (Tex. App.—El Paso 2020, pet. denied) (citing *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998)). Our primary duty is to ascertain the intent of the parties from the four corners of the instrument. *Wenske v. Ealy*, 521 S.W.3d 791, 794 (Tex. 2017); *see also Canter v. Lindsey*, 575 S.W.2d 331, 334–35 (Tex. App.—El Paso 1978, writ ref'd n.r.e.). We use a holistic approach in determining the parties' intent, and we therefore must examine the entire instrument seeking to harmonize and give effect to all its provisions such that no provision is rendered meaningless. *See Piranha Partners v. Neuhoff*, 596

S.W.3d 740, 746–49 (Tex. 2020) (citing *Luckel*, 819 S.W.2d at 462; *Altman v. Blake*, 712 S.W.2d 117, 118 (Tex. 1986)). In discerning the parties' intent, "words and phrases must be construed together and in context, not in isolation." *Hysaw v. Dawkins*, 483 S.W.3d 1, 13 (Tex. 2016) (citing *Plainsman Trading Co. v. Crews*, 898 S.W.2d 786, 789 (Tex. 1995)). Words and phrases generally bear their ordinary meaning unless the context supports a technical meaning or a different understanding. *Id.* at 13 (citing *In re Office of the Att'y Gen. of Texas,* 456 S.W.3d 153, 155-56 (Tex. 2015)). Similarly, apparent inconsistencies or contradictions must be harmonized, to the extent possible, by construing the document as a whole. *Id*. (citing *Luckel,* 819 S.W.2d at 462).

## III. ANALYSIS

On appeal, Devon Energy contends the trial court erred in characterizing the reservation as a royalty interest, and that instead, the Harris Grantors conveyed 15/16th of their mineral estate to Lopoo, while reserving a 1/16th mineral estate shorn of the executive interest to lease and to receive bonuses and delay rentals. Enplat II, on the other hand, contends the trial court correctly concluded that the Harris Grantors conveyed their entire mineral estate to Lopoo, while reserving a fixed 1/16th royalty interest. As set forth above, we must examine the deed in its entirety to determine which interpretation is accurate.

### A. Lack of the term "royalty" in the deed

As a preliminary matter, we address Devon Energy's argument that the reservation in the 1940 deed did not include the term "royalty," reflecting the Harris Grantors' deliberate intent to reserve a mineral interest rather than a royalty interest. Although we agree with Devon Energy that the inclusion or absence of the term "royalty" can be a factor in determining a grantor's intent, it is not dispositive. *See Temple-Inland Forest Products Corp. v. Henderson Family Partnership*, 958 S.W.2d 183, 185 (Tex. 1997). If we determine the language described a royalty interest without using the word royalty, we may still find that the Harris Grantors intended to reserve such

an interest. *See, e.g.*, *Pinchback v. Gulf Oil Corp.*, 242 S.W.2d 242, 243 (Tex. App.—Beaumont 1951, writ ref'd n.r.e.) (finding that deed created a royalty interest despite the failure to use the term "royalty").

### B. The initial reservation clause: a cost-bearing mineral interest or a cost-free royalty interest?

We start with the first phrase in the reservation, which provides that the Harris Grantors were reserving an "undivided one-sixteenth (1/16) of any and all oil, gas or other mineral produced on or from under the land above described." Pointing to various cases interpreting similarly worded phrases, Devon Energy contends that this phrase was intended to convey a mineral interest. Devon Energy relies on the long-standing principle proclaimed by the Texas Supreme Court that a conveyance or reservation of a fractional interest in the oil, gas or other minerals "in and under" the property that "may be produced" refers to a mineral interest rather than a royalty interest.[3] *See, e.g.*, *Altman*, 712 S.W.2d at 118 (recognizing that the language in a 1938 deed conveying "an undivided one-sixteenth (1/16) interest in and to all the oil, gas and other minerals in and under and that may be produced from" a tract referred to a mineral interest); *Temple-Inland*, 958 S.W.2d at 185 (deed stating that "grantor retains title to a 1/16 interest in and to all of the oil, gas and other minerals in and under and that may be produced from said land," standing alone, referred to a reservation of a mineral interest); *Watkins v. Slaughter*, 189 S.W.2d 699, 700 (Tex. 1945) (recognizing when a grantor states he is retaining "title to a 1/16 interest in and to all of the oil, gas and other minerals in and under and that may be produced from said land," without more, court

---

[3] We have also recognized this principle in our holdings. *See Canter v. Lindsey*, 575 S.W.2d 331, 335 (Tex. App.—El Paso 1978, writ ref'd n.r.e.) (holding that a granting clause reciting the conveyance of an undivided fractional interest "in and to all the oil, gas and other minerals in and under the . . . land conveyed the undivided interest of the minerals in place"); *Badger v. King*, 331 S.W.2d 955, 957-58 (Tex. App.—El Paso 1959, writ ref'd n.r.e.) (conveyance of "[o]ne sixty-fourth (1/64) interest in and to all of the oil and gas in and under and that may be produced from the following described lands" conveyed a mineral interest of 1/64th of the oil and gas in place); *Pan Am. Petroleum Corp. v. Texas Pac. Coal & Oil Co.*, 340 S.W.2d 548, 555, 557 (Tex. App.—El Paso 1960, writ ref'd n.r.e.) (granting clause which conveyed an "undivided one-thirty second (1/32) interest in and to all of the oil, gas and other minerals in and under and that may be produced" from the described land was a mineral interest).

should interpret this as reserving a mineral interest).[4] As our sister court has recognized, the term "in and under" has "become a kind of shorthand for a statement that the interest described bears the expense of production and is therefore to be classified as a mineral interest." *Barker v. Levy*, 507 S.W.2d 613, 615 (Tex. App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.); *see also Richardson v. Hart*, 143 Tex. 392, 396, 185 S.W.2d 563, 564–65 (1945) (deed that conveyed an interest in "all the oil, gas or other minerals in and under *or* produced from the land" created a mineral interest).

But, as Devon Energy points out, a deed need not use the exact term "in and under" to denote a mineral interest and may instead use terms of "similar import." *See Miller*, 259 S.W.2d at 237. This includes references to an interest in the minerals "in, on and under" the property that may be produced from the described lands, and an interest to the minerals "in and under, and that may be produced" from the land. *See Smith v. Graham*, 705 S.W.2d 705, 707 (Tex. App.—Texarkana 1985, writ ref'd n.r.e.) (recognizing that in Texas, "the language 'oil, gas and other minerals in, on and under' conveys a mineral interest"); *see also French*, 896 S.W.2d at 797–98 (standing alone, the following language reflected the conveyance of a mineral estate: "an undivided [fractional] interest in and to all of the oil, gas and other minerals in, under, and that may be produced from the described lands"); *Greer*, 503 S.W.3d at 585 (clause stating party was purchasing 1/2 of the "minerals, produced in and from wells or other operations situated on the specific tract of land described in this instrument" was indicative of a mineral interest).

---

[4] In *Watkins*, the deed stated that the grantor was reserving a "1/16th interest in and to all of the oil, gas and other minerals in and under and that may be produced from said land," which the court recognized, standing alone, would denote the grantor's intent to reserve a 1/16th mineral interest. *Watkins v. Slaughter*, 144 Tex. 179, 189 S.W.2d 699, 700 (1945). However, in that case, the deed unequivocally stated in the last clause that the grantor "shall receive the *royalty* retained herein only from actual production of oil, gas or other minerals as said land." *Id.* at 700. And given this express reference to the reservation as being a royalty interest, which the court noted has a distinct meaning in the law, the court interpreted the deed as reserving a royalty interest only. *Id.* at 700-01. In contrast, a set forth above, the deed under consideration here does not use that label.

Enplat II acknowledges this general principle but contends that the language used in the 1940 deed was not of similar import to the "in and under" language traditionally associated with a mineral interest. Enplat II points out that rather than reserving an interest in the minerals "in and under" the property itself that were to be produced, the reservation stated that it was for the "oil, gas or other mineral *produced* on or from under the land." According to Enplat II, this phraseology reflected the grantors' intent to reserve the minerals *after* they were produced, rather than the minerals that were in place in the ground.[5]

To support its argument, Enplat II relies on two of our sister courts' opinions, which it believes construed deeds containing similar language as denoting a royalty interest. First, Enplat II refers to the Eastland Court's opinion in *Miller v. Speed*, interpreting a deed that reserved an "undivided 1/24th of all the oil, gas and other minerals produced, saved and made available for market therefrom for a period of 15 years from the date hereof . . . ." *Miller v. Speed*, 259 S.W.2d at 236. In construing the reservation as a royalty interest, the court concluded that the deed, by its express terms, clearly stated that the reserved interest was in the value of the minerals after they were "produced, saved and made available for market," thereby demonstrating the grantor's intent to reserve a post-production interest in the minerals, i.e., a royalty interest. *Id.* at 238, 249. The court in *Miller* also found it significant that the deed did not use the term "in and under" or any

---

[5] Enplat II argues that because "oil, gas and other minerals" is followed by "produced," "on or from under" necessarily modifies the grammatically-created participial phrase "oil, gas and other minerals produced." In construing mineral-interest conveyances, The Texas Supreme Court has "'incrementally cast off rigid, mechanical rules" and "warned against quick resort to . . . default or arbitrary rules' in favor of determining intent by "conducting a careful and detailed examination of a deed in its entirety, rather than applying some default rule that appears nowhere in the deed's text.'" *Piranha Partners*, 596 S.W.3d at 746 (Tex. 2020) (quoting *Wenske*, 521 S.W.3d at 792; *and citing Hysaw*, 483 S.W.3d at 4 (rejecting reliance on "bright-line rules of interpretation that are arbitrary and, thus, inimical to an intent-focused inquiry"). In following the Texas Supreme Court's guidance, this court has expressly rejected "rules of construction which give priority to certain clauses over others or require the use of so-called 'magic words.'" *WTX Fund, LLC*, 595 S.W.3d at 293 (quoting *Wenske*, 521 S.W.3d at 794).

similar terms in describing the reservation that would reflect the grantor's contrary intent to reserve a mineral interest. *Id.* at 239.

Second, Enplat II relies on the Beaumont Court's holding in *Pinchback v. Gulf Oil*, which found that a deed reserving a "1/8th of all minerals that may hereafter be produced and saved on the land conveyed" was "akin" to a royalty interest. *Pinchback*, 242 S.W.2d at 243. As in *Miller*, the court in *Pinchback* found it significant that the deed lacked any of the traditional "in and under" language associated with a mineral interest. *Id.*

There are at least two important distinctions between the 1940 deed in the present case and the deeds at issue in *Miller* and *Pinchback*. First, the deeds in those cases referred to minerals that have been "produced, saved and made available for market," or "produced and saved," which are terms that have historically been viewed as creating a royalty interest. *See Grissom v. Guetersloh*, 391 S.W.2d 167, 170–71 (Tex. App.—Amarillo 1965, writ ref'd n.r.e.) (reservations referencing in "interest in minerals 'produced, saved and made available for market' or other similar phrases" including an interest in "actual production" have been held to "show an intention of the parties to reserve a royalty interest as opposed to a mineral interest"); *Bank One, Texas, Nat'l Ass'n v. Alexander*, 910 S.W.2d 530, 534–35 (Tex. App.—Austin 1995, writ denied) (recognizing that the use of the phrase "produced and saved" is "persuasive that the interest is a royalty"); *White v. White*, 830 S.W.2d 767, 770 (Tex. App.—Houston [1st Dist.] 1992, writ denied) (use of the term "produced and saved" referred to a royalty interest); *Barker*, 507 S.W.2d at 615 (deed that conveyed "a [o]ne/one hundred and sixtieth (1/160th) part of all . . . minerals that may be produced and saved" from certain property created a conveyance of a fixed 1/160th royalty interest in the minerals produced, unburdened by production costs). "Produced and saved" in a deed refers to the minerals *after* they have already been produced and made ready for market, thereby indicating that the interest is in the actual production rather than in the minerals themselves. Here, the 1940 deed

9

did not use any of the terms historically associated with a post-production royalty interest, which we find to be a material distinction. *See Grissom v.* 391 S.W.2d at 169 (finding the lack of reference to the terms "produced, saved and made available for market" to be a "very material" factor in finding that a deed reserved a mineral interest rather than a royalty interest).

Second, unlike the deeds in *Miller* and *Pinchback*, the 1940 deed used words similar to the "in and under" language traditionally associated with a mineral interest. Specifically, the deed stated that the Harris Grantors were reserving the minerals "produced on or from under the land," which this court has recognized is language indicative of a mineral interest. *See, e.g.*, *Greer*, 503 S.W.3d at 585 (deed providing that grantee was purchasing 1/2 of the "minerals, produced in and from wells or other operations situated on the . . . land" was language referring to a mineral interest) (citing *Concord Oil. Co.*, 366 S.W.2d at 453, 459).

Given the reservation's use of terms traditionally associated with a mineral interest, we conclude that the first clause of the reservation was more akin to a mineral interest than a royalty interest. As discussed below, this conclusion is consistent with the remaining provisions in the deed and is the best way to harmonize the deed in a manner that accords meaning to all of its provisions.

## C. The remaining provisions: attribute stripping or clarification?

The remaining provisions in the deed state that the grantee, Lopoo, "shall have the right to lease said land for mineral development without the joinder of Grantors or their heirs and assigns, and to keep all bonus money, as well as all delay rentals, but when, if and as Oil, Gas or other mineral is produced from said land, one-sixteenth (1/16) of same, or the value thereof, shall be the property of Grantors, their heirs or assigns." Devon Energy contends these remaining provisions demonstrate that the Harris Grantors intended to reserve a 1/16th mineral interest while conveying to Lopoo three mineral interest attributes—the executive right to lease the entire property, the right

10

to receive bonus payments, and the right to receive delay rentals—but expressly reserving for themselves a fourth attribute of the mineral estate, i.e., the right to receive royalty payments commensurate with their 1/16th mineral interest. Enplat II, on the other hand, contends that the Harris Grantors, while granting Lopoo the entire mineral estate, were merely "confirm[ing]" that Lopoo was receiving these three key attributes of the mineral estate, and that they were only reserving a fractional royalty interest. We agree with Devon Energy's interpretation.

The mineral estate is comprised of five rights: "1) the right to develop, 2) the right to lease, 3) the right to receive bonus payments, 4) the right to receive delay rentals, and 5) the right to receive royalty payments." *Hysaw,* 483 S.W.3d at 9 (citing *French*, 896 S.W.2d at 797). When an "undivided mineral interest is conveyed, reserved, or excepted, it is presumed that all attributes remain with the mineral interest unless a contrary intent is expressed." *See French*, 896 S.W.2d at 797; *see also Anadarko Petroleum Corp. v. BNW Prop. Co.*, 393 S.W.3d 846, 849 (Tex. App.— El Paso 2012, pet. denied). However, because each attribute of the bundle is an independent property right, the various rights may be "severed into a separate interest whether separately conveyed or reserved by the owner." *Ridgefield Permian, LLC v. Diamondback E & P LLC*, 626 S.W.3d 357, 363 (Tex. App.—El Paso 2021, pet. denied) (citing *Concord Oil Co.*, 966 S.W.2d at 457)

Devon Energy's interpretation of the deed is referred to as attribute-stripping, which the Texas Supreme Court explained in *Altman v. Blake*. In that case, a 1938 deed first conveyed "an undivided one-sixteenth (1/16) interest in and to all of the oil, gas and other minerals in and under and that may be produced from" the subject property. *Altman*, 712 S.W.2d at 117. The deed then purported to limit the interest conveyed, stating that the grantee "does not participate in any rentals or leases" but that he had "the rights of ingress and egress at all times for the purpose of mining, drilling, exploring and developing said lands[.]" *Id.* at 117-18. After concluding that the initial

11

conveyance clause clearly referred to a mineral interest, the court considered the grantee's heirs' argument that the grantor intended to convey a royalty interest based on the subsequent provisions denying the grantee the right to make leases and to receive delay rentals. *Id.* In rejecting this argument, the court referred to the five attributes of a mineral estate and noted that the deed—while granting a mineral estate to the grantee—reserved two of the attributes, i.e., the right to lease and the right to receive delay payments. *Id.* The court recognized the deed as one providing the grantee "a mineral interest shorn of the executive right [to lease the Property] and the right to receive delay rentals" while affording the grantee the other remaining attributes of the mineral estate—the right to receive bonus payments and the right to receive royalty payments. *Id.* at 118-19. Importantly, the court recognized that the mineral estate grant is not transformed into a royalty interest merely because the grantor chooses to reserve certain attributes of the mineral estate for himself. *Id.*; *see also Greer*, 503 S.W.3d at 578 (the mineral interest conveys even if it is "shorn of the executive right and the right to receive delay rentals remains an interest in the mineral fee").

Enplat II argues that the court's opinion in *Temple-Inland* limited the scope of the attribute-stripping doctrine espoused in *Altman*, positing that the court in that case "ignored an attribute-stripping clause" when it determined that a deed conveyed a royalty interest rather than a mineral interest. We disagree. In *Temple-Inland*, the deed initially stated that the grantor was conveying "an undivided fifteen-sixteenths (15/16ths) interest in, to and of all oil, gas and other minerals . . . that may be produced from the following described land," which the court recognized suggested the conveyance of a mineral interest. *Temple-Inland*, 958 S.W.2d at 184. However, the deed then clearly stated that the reservation of the "*one-sixteenth (1/16th) interest is and shall always be a royalty interest* and *shall not be charged with any of the costs* which the Grantee may incur in exploring, drilling, mining, developing and operating wells or mines for the production of oil, gas and other minerals." *Id.* at 184-85. The court found it significant that the term "royalty" appeared

"no less than six times" in the deed and was expressly characterized as being "free of the costs," which is the defining hallmark of a royalty interest. *Id*. at 186. The court therefore concluded that the grantor intended to reserve a cost-free royalty interest despite the initial language in the deed suggesting otherwise. *Id*. (citing *Watkins*, 189 S.W.2d 699 at 700) (although the initial reservation clause referenced a mineral interest, the last clause in the deed stated that the grantor was to "receive the royalty retained herein only from actual production of oil, gas or other minerals on said land," which clearly demonstrated an intent to reserve a royalty interest).

In reaching its conclusion, the court in *Temple-Inland* made it clear that its *Altman* and *French* attribute-stripping approach to mineral interest conveyances was still good law. *Id*. at 185-86. The court distinguished *Altman*, explaining that the deed in *Altman* used language historically associated with a mineral interest conveyance while expressly reserving two attributes of that interest. *Id.* (citing *Altman,* 712 S.W.2d at 118). And the court found it significant that, unlike the deed in *Temple-Inland*, the deed in *Altman* did not use the term "royalty" or otherwise indicate that a cost-free interest was being reserved.[6] *Id*. The *Temple-Inland* court also distinguished its holding in *French*, noting that the deed in that case, while using the term "royalty" in the last provision, clearly stated in other provisions that the grantor intended to reserve a mineral estate that was stripped of all rights except the right to receive the royalty interest. *Id*. at 185 (citing *French*, 896 S.W.2d at 796–97).

In the present case too, the attribute-stripping mineral interest approach is appropriate to harmonize all provisions in the 1940 deed. As explained above, the reservation language indicated that the Harris Grantors intended to reserve a 1/16th interest in their mineral estate but then stated that Lopoo had the right to lease the Property, the right to develop the Property without joining the

---

[6] It is worth noting that the 1940 deed in this case also did not indicate that a cost-free interest was being reserved.

Grantors, the right to receive bonus payments, and the right to receive delay rentals, thereby stripping themselves of the first four attributes of the mineral estate. However, the Harris Grantors then made it clear that they did not intend to strip themselves of the fifth and final attribute of their estate, i.e., the right to receive royalty payments, by stating, "but when, if and as Oil, Gas or other mineral is produced from said land, one-sixteenth (1/16) of same, or the value thereof, shall be the property of Grantors, their heirs and assigns."

Enplat II points out that the language in this final clause in the deed is in fact language indicative of a royalty interest. *See, e.g.*, *Royal Petroleum Corp. v. Dennis*, 332 S.W.2d 313, 315 (Tex. 1960) (royalty owner's "right to royalty payments depended upon production, when, and if produced"); *Chaffin v. Hall*, 210 S.W.2d 191, 193 (Tex. App.—Eastland 1948, writ ref'd n.r.e.) (recognizing that a royalty interest is "purely contingent" and that a royalty owner will only be paid "[i]f and when" production is obtained). We would agree that the Harris Grantors intended to reserve a royalty interest if this—the final clause of the reservation—were the only provision in the deed. But it is not, and we cannot view the clauses in isolation.

When read in context with the earlier provisions, this final provision clarifies that although the grantors intended to strip themselves of all other attributes of their reserved mineral estate, they were not stripping themselves of their right to receive royalty payments for minerals if and when there was production on the Property. And significantly, unlike the deed in *Temple-Inland* and the other cases upon which Enplat II relies, the Harris Grantors did not refer to their reservation as being a "cost-free" royalty interest and did not use the term "royalty" at any point in describing their reservation. *See Temple-Inland*, 958 S.W.2d at 184; *see also Neel v. Alpar Resources Inc.*, 797 S.W.2d 361, 362 (Tex. App.—Amarillo 1990, no writ) (where initial reservation clause in the deed used language indicating that a 1/16th mineral estate was being reserved but later provisions stated the reserved interest was to be "free of cost," court concluded that the grantor intended to

14

reserve a 1/16th royalty interest only). We therefore find the deed language here akin to the reservation in *French v. Chevron*, which the court interpreted as a mineral estate shorn of all attributes but for the right to receive a royalty interest if and when there was production on the land. *French,* 896 S.W.2d at 798.

This interpretation best harmonizes and gives meaning to all provisions in the deed. Enplat II's interpretation, on the other hand, would create multiple redundancies and inconsistencies. As Devon Energy points out, if the Harris Grantors had not intended to reserve a 1/16th mineral interest and had only intended to reserve a royalty interest, there would have been no reason for them to apportion the various attributes of the mineral estate between themselves and Lopoo. *See Reed v. Maltsberger/Storey Ranch, LLC*, 534 S.W.3d 51, 63 (Tex. App.—San Antonio 2017, pet. denied) (recognizing that if the grantors "had meant to convey only a royalty interest, they need not have reserved to themselves the right to receive delay rentals and cash bonuses because '[a] grant of a royalty interest, without any further grant, does not convey an interest to the grantee in delay or other rentals, or in bonus payments, nor would it convey executive rights.'"); *see also Prairie Producing Co. v. Schlachter*, 786 S.W.2d 409, 412–13 (Tex. App.—Texarkana 1990, writ denied) (if a "royalty interest had been intended, there would have been no need to reserve rentals and bonuses because a royalty interest does not share in bonuses and rentals unless the conveyance or reservation specifically provides otherwise") (citing *Schlittler v. Smith*, 101 S.W.2d 543 (Tex. [Comm'n Op.] 1937). If the Harris Grantors had intended by the initial reservation clause to only reserve a royalty interest, the remaining provisions dividing up the mineral estate attributes would serve no purpose. *See French*, 896 S.W.2d at 798 (finding that the interest described in a deed was not a royalty interest because the express language removing the attributes of the mineral estate "would serve no purpose whatsoever if the interests in minerals being conveyed was a . . . royalty interest").

15

We therefore sustain Devon Energy's issue on appeal and hold that the 1940 deed reserved a mineral estate shorn of all attributes but for the right to receive a royalty interest if and when there was production on the land. *French*, 896 S.W.2d at 798.

## IV. CONCLUSION

We reverse the trial court's order granting summary judgment and remand to the trial court for further proceedings consistent with our opinion.

LISA J. SOTO, Justice

July 10, 2023

Before Rodriguez, C.J., Soto, J., and Marion, C.J. (Ret.)
Marion, C.J. (Ret.) sitting by assignment